UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

MARIA KERRIGAN HAUPT,

    Plaintiff,

v.

THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE,

    Defendant.

---

CASE NO.:

Judge:

Magistrate:

## COMPLAINT

Plaintiff MARIA KERRIGAN HAUPT (hereinafter referred to as "MS. KERRIGAN HAUPT"), by and through undersigned counsel, hereby files this Complaint and sues THE BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERSITY AND AGRICULTRUAL AND MECHANICAL COLLEGE (hereinafter, "DEFENDANT"). MS. KERRIGAN HAUPT seeks damages and attorneys' fees and costs pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (hereinafter "RA" or "Rehabilitation Act").

## JURISDICTION AND PARTIES

1. This is an action for damages and attorneys fees pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. This Court is vested with original jurisdiction pursuant

to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[1]

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the medical school which is the subject of this action is in Shreveport, Louisiana.

3. MS. KERRIGAN HAUPT is a person of the age of majority, a citizen of the United States, and is domiciled in the State of Louisiana.

4. MS. KERRIGAN HAUPT resides in Caddo Parish, Louisiana.

5. MS. KERRIGAN HAUPT is a qualified individual with a disability under the Rehabilitation Act.

6. MS. KERRIGAN HAUPT has Crohn's Disease. MS. KERRIGAN HAUPT's disability results in sporadic "flares." During a flare, MS. KERRIGAN HAUPT experiences severe abdominal pain, GI upset, nausea, vomiting, inability to eat, marked fatigue, and, at times, transient difficulty concentrating related to the physical burden of disease during active flares, among other issues.

7. Due to her disability, MS. KERRIGAN HAUPT can experience substantial impairment during flares in several major life activities and requires accommodation within educational environments. Specifically, over the years, MS. KERRIGAN HAUPT has required (and received) accommodations in the form of extensions of time for completing assignments, leniency for illness-related absence, extended exam and break time, or related deadlines.

8. THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE (referred to as "DEFENDANT") is

---

[1] Ms. Kerrigan Haupt seeks both compensatory and nominal damages pursuant to the Rehabilitation Act of 1973. It is Ms. Kerrigan Haupt's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against the DEFENDANT, regardless of the amount, would deter the DEFENDANT from discriminating against individuals with disabilities in the future.

the political entity responsible for owning, administering, operating, and/or maintaining the Louisiana State University.

9. Upon information and belief, Louisiana State University Health Shreveport is a public university which is open to enrollment to members of the public, including MS. KERRIGAN HAUPT.

10. DEFENDANT is responsible for complying with the obligations of the RA.

11. Most of the events giving rise to this lawsuit occurred in the Western District of Louisiana, Caddo Parish, Louisiana.

## STATEMENT OF FACTS

12. In July 2021, MS. KERRIGAN HAUPT enrolled as a medical student at Louisiana State University Health Shreveport (hereinafter "LSUHS").

13. Due to her disability, during active flares of disease, MS. KERRIGAN HAUPT can be substantially impaired in several major life activities, including eating, concentrating, and sustaining physical stamina. At such times, she has required reasonable accommodations within the educational environment to maintain full participation. On occasion, MS. KERRIGAN HAUPT required accommodation in the form of extensions of time for completing assignments, leniency for illness-related absence, extended exam and break time, or related deadlines.

14. MS. KERRIGAN HAUPT's Crohn's disease is extremely reactive to stress, which can result in prolonged episodes of incapacity for Plaintiff.

15. MS. KERRIGAN HAUPT was a successful student at LSUHS. MS. KERRIGAN HAUPT passed her courses, paid her required tuition, and completed her clinical rotations without interruption. MS. KERRIGAN HAUPT was inducted into the Gold Humanism Honor

Society, a national organization that recognizes medical students for demonstrated excellence in clinical care, leadership, compassion, and dedication to service. MS. KERRIGAN HAUPT is an AHEC Scholar, and received Honors in the Family Medicine clerkship, the specialty in which she matched through the National Residency Matching Program.

16. MS. KERRIGAN HAUPT's final year at LSUHS was supposed to be 2024/2025, which would end in May of 2025.

17. To graduate from LSUHS, MS. KERRIGAN HAUPT was also required to complete and pass the USMLE Step 1 and Step 2 medical licensing exams.

18. MS. KERRIGAN HAUPT originally planned to take both the USMLE Step 1 and Step 2 exams in October of 2024. During that time, however, the manifestations of MS. KERRIGAN HAUPT's disability intensified, and she thus had reduced time to focus on tasks required of students, such as course requirements, rotations, etc.

19. Because the manifestations of her disability occupied much of her time, MS. KERRIGAN HAUPT temporarily delayed taking the Step 1 and Step 2 exams. MS. KERRIGAN HAUPT obtained permission from the LSUHS Associate Dean of Medical Education for this delay.

20. MS. KERRIGAN HAUPT successfully sat for and passed the USMLE Step 2 Exam on her first attempt in February of 2025. This meant she only had to pass her Step 1 Exam to meet graduation requirements per the Requirements for Graduation policy, revised November 7, 2023, which falls under LCME Element 10.3. This policy governs the criteria for degree conferral at LSU Health Shreveport School of Medicine.

21. On March 20, 2025, MS. KERRIGAN HAUPT met with Dr. Kelly Pagidas, Senior Associate Dean for Medical Education, to discuss a plan for graduation.

22. MS. KERRIGAN HAUPT explained how her disability has reduced the time that she had to work towards completing her degree requirements. During the meeting on March 20th, it was agreed that MS. KERRIGAN HAUPT would take the Step 1 Exam on April 15, 2025. This examination date was selected so that MS. KERRIGAN HAUPT would retain eligibility to participate in the May 10, 2025, commencement ceremony.

23. After agreeing to this proposal, MS. KERRIGAN HAUPT learned that the organization that administers Step 1 and Step 2 exams, the National Board of Medical Examiners ("NBME"), could take between two and four weeks to score the examination. MS. KERRIGAN HAUPT realized that she could take the Step 1 Exam on April 15, 2025, and it was possible that the NBME would not release score results until after the date of Defendant's commencement ceremony - May 10, 2025.

24. On March 31, 2025, MS. KERRIGAN HAUPT sent an email to Dr. Pagidas. In the email, MS. KERRIGAN HAUPT explained the nature of her disability, the issue concerning her timeline caused by flares related to her disability, the timeline for Step 1 Exam results to be posted by the NRMP, and MS. KERRIGAN HAUPT concluded by stating:

    > "My request would be that LSUHS School of Medicine would allow my MD degree be conferred upon successful completion of Step 1 this spring— even if the score is returned after April 30 but before June 1—so that I may fulfill my contractual obligations to the NRMP and begin residency on time, without risking adverse effects on my health or accelerating the progression of my autoimmune disease. I do not even need to walk at the ceremony if the school would rather me not walk on May 10, because my focus is on completing step 1 strong - which I can and will do - and getting to residency successfully."

25. In responding to this email, Ms. Pagidas did not state that Plaintiff's request was unreasonable, did not state that the request would fundamentally change LSUHS's program, or would cause an undue burden for LSUHS. Nonetheless, Dr. Pagidas denied MS. KERRIGAN HAUPT's request:

> "Regarding the timeline to complete all the graduation requirements to include the successful completion of the USMLE Step 1 Exam for the MD degree to be conferred on May 10, 2025, it remains as previously stated. The ask is that every effort be made to sit for the exam as discussed, agreed upon and scheduled (via NBME) for April 15, 2025."

26. Unsatisfied with this response, on April 8, 2025, MS. KERRIGAN HAUPT submitted a document that was a "formal request for ADA accommodations regarding the USMLE Step 1 timeline and graduation eligibility."

27. Dr. Pagidas requested that MS. KERRIGAN HAUPT complete LSUHS's "Request for Accommodation Form."

28. In response, MS. KERRIGAN HAUPT completed the form and submitted it on April 10, 2025.

29. Attached to the request for accommodation form was a detailed statement by MS. KERRIGAN HAUPT concerning her disability, the delays that had recently been caused by the flair ups of her disability, the limitations caused by her disability, documentation from her treating physician, and her requested accommodation.

30. Specifically, MS. KERRIGAN HAUPT explained that her "proposal for a reasonable accommodation would be to allow my M.D. degree to be conferred as soon as a passing USMLE Step 1 score is received, as long as it is received before July 1st, 2025 consistent with the NRMP's deadline, as I will have met all other graduation requirements by the end of the spring semester."

31. On April 14, 2025, MS. KERRIGAN HAUPT learned that a person from Defendant's "ADA Office" would be responding to her request for accommodation. This person turned out to Ms. Pamela Williams, Defendant's ADA Coordinator in Office of the Chancellor.

32. On April 14, 2025, from 3:43 p.m. until 3:56 p.m., MS. KERRIGAN HAUPT spoke via phone with Ms. Williams concerning her requested accommodation.

33. Thereafter, at 4:23 p.m., MS. KERRIGAN HAUPT proactively supplied Ms. Williams with documentation from a prior university that had accommodated her disability and another letter from her previous physician documenting the limitations caused by her disability.

34. At that exact same time, 4:23 p.m., Ms. Williams responded on behalf of LSUHS to MS. KERRIGAN HAUPT's request for accommodation. Specifically, Ms. Williams denied MS. KERRIGAN HAUPT's request and stated that the reason for the denial was:

    "Fundamental Alteration- Allowing you to take the Step 1 exam outside of the standard timeline and be inconsistent with deadlines would fundamentally alter the essential components of the program. LSUHS is not required to implement changes that would cause undue hardship or fundamentally alter the nature of its services, programs, or activities."

35. Nowhere in the April 14, 2025, correspondence does Ms. Williams state that MS. KERRIGAN HAUPT's requested accommodation would have been unreasonable, was not necessary, or would have caused Defendant an undue burden.

36. Nowhere in the April 14, 2025, correspondence does Ms. Williams explain how or why providing the requested accommodation would constitute a "fundamental alteration."

37. A review of LSUHS's graduation policy reveals that MS. KERRIGAN HAUPT's requested accommodation was not a fundamental alteration.

38. MS. KERRIGAN HAUPT was approved by the NBME to take the USMLE Step 1 over two days as part of an ADA accommodation from NBME Disability Services; NBME further confirmed that the score reporting timeline would be calculated from the first day of testing, which was April 15th, 2025.

39. On May 8, 2025, MS. KERRIGAN HAUPT received an email from Dr. Pagidas, who stated, among other things, that "Although, it appears that the exam was administered on April 15th, 2025, there is no published report and as such we cannot confirm your successful completion of the USMLE Step 1 Exam."

40. Dr. Pagidas went on to state "Consequently, you will not be conferred an MD degree during graduation on May 10th, 2025, and you will not be able to participate in the commencement ceremony as you have not successfully completed the USMLE Step 1 Exam per the Requirements for Graduation Policy."

41. This was the exact reason MS. KERRIGAN HAUPT made her request for accommodation. MS. KERRIGAN HAUPT requested an accommodation because her ongoing medical condition was interfering with her ability to prepare for Step 1, and she was concerned that, given the proximity to commencement and NBME's standard scoring timeline, this could delay her graduation and subsequent entry into the workforce. This is precisely the reason she requested an accommodation.

42. On May 14, 2025, MS. KERRIGAN HAUPT and Defendant's employees were advised by the NBME, per the standard 2-4 week reporting timeline, that MS. KERRIGAN HAUPT passed the USMLE Step 1 Exam.

43. Despite learning that MS. KERRIGAN HAUPT had passed the exam, Defendant still refused to convey a degree to MS. KERRIGAN HAUPT.

44. MS. KERRIGAN HAUPT sent several communications to Defendant's employees to amicably resolve the issue. Defendant refused to budge from its position.

45. Without the requested accommodation/modification, MS. KERRIGAN HAUPT was unable to graduate on time.

46. Additionally, MS. KERRIGAN HAUPT completed the requirements for a Distinction in Research designation, but this designation was wrongfully withheld from MS. KERRIGAN HAUPT.

47. To be eligible for the Distinction in Research designation, MS. KERRIGAN HAUPT had

to complete a research project, submit a grant application, and obtain certification of all requirements from her mentor, among other requirements.

48. MS. KERRIGAN HAUPT obtained a signed certification from her faculty mentor that all requirements for the Distinction in Research designation had been completed. MS. KERRIGAN HAUPT was also in communication with an LSUHS as to the Distinction in Research designation and MS. KERRIGAN HAUPT understood herself to have been on track to satisfy all the program requirements.

49. On May 14, 2025, MS. KERRIGAN HAUPT was unexpectedly advised by the faculty co-director of the Research Distinction track, Giovanni Solitro, that the Distinction in Research designation would not be conveyed to her.

50. That same day, MS. KERRIGAN HAUPT emailed Dr. Solitro and requested "a written determination outlining the specific reason the distinction will not be conferred, including which criteria, if any, were not met."

51. Copied to the emails from Dr. Solitro was Dr. Kelly Pagidas,

52. The next day, May 15, 2025, Dr. Solitro provided the purported basis of the denial of the Research Distinction designation. One of the reasons cited was that MS. KERRIGAN HAUPT's submission was allegedly untimely.

53. However, this and the other reasons cited were inaccurate.

54. As to the timeliness issue, Heather Rivera, Program Coordinator for Medical Student Research, stating on May 1, 2025, as to MS. KERRIGAN HAUPT's outstanding manuscript, "That is perfectly fine. Just get it to me as soon as you can."

55. On May 16, 2025, MS. KERRIGAN HAUPT provided a detailed response to Dr. Solitro and Dr. Pagidas explaining her eligibility for said distinction, and she supplied supporting

documentation.

56. MS. KERRIGAN HAUPT received no response.

57. MS. KERRIGAN HAUPT sent emails to at least two other of Defendant's employees requesting clarification or review of her documentation. No substantive response was ever provided.

58. Upon information and belief, Defendant, through Dr. Solitro and Dr. Pagidas, withheld the Research Distinction designation from MS. KERRIGAN HAUPT because of her self-advocacy related to her requested accommodation and the concerns she raised under the Americans with Disabilities Act and Rehabilitation Act.

59. Upon information and belief, Defendant, the withholding of the Research Distinction designation from MS. KERRIGAN HAUPT constituted retaliation under the Rehabilitation Act.

*Plaintiff's Requested Accommodation Was Not a Fundamental Alteration*

60. MS. KERRIGAN HAUPT's requested accommodation would not have been a fundamental alteration because (1) it is consistent with LSUHS's graduation policy, and (2) the requested modification would not have required any substantive deviations from LSUHS's medical curriculum or technical standards related to medical skills or abilities that are essential to LSUHS's educational program.

61. MS. KERRIGAN HAUPT's requested accommodation/modification would have been consistent with Defendant's graduation policy.

62. LSUHS's graduation policy states "Students must successfully complete all listed criteria to be eligible for graduation. * Successfully complete the USMLE Step 1 Exam and USMLE Step 2 Clinical Knowledge Exam before graduation." The policy also delineates commencement and graduation as separate events with no reference to any specific date.

63. MS. KERRIGAN HAUPT sat for the examination on April 15, 2025, and April 26th, 2025. However, the NBME confirmed that the score reporting timeline would be calculated from the first day of testing, which was April 15th, 2025.

64. The date of Defendant's commencement ceremony was May 10, 2025.

65. However, Defendant's "Requirements for Graduation Policy" does not contain a cutoff as to when all requirements for degree conferral must be completed.

66. Additionally, other schools within Defendant's educational system conferred degrees after May 10, 2025. For example, the LSU Health School of Nursing's commencement ceremony was on May 15, 2025.

67. Moreover, as is set forth above, MS. KERRIGAN HAUPT had supplied all answers to the USMLE Step 1 Exam before May 10, 2025.

68. To be sure, the NBME had not yet completed scoring MS. KERRIGAN HAUPT's exam.

69. Nonetheless, MS. KERRIGAN HAUPT "completed" and passed the USMLE Step 1 Exam with a score release date calculated from April 15, 2025.

70. MS. KERRIGAN HAUPT's requested modification/accommodation was not a fundamental alteration because it was not a substantive deviation from LSUHS's medical curriculum. MS. KERRIGAN HAUPT successfully completed all required courses and obtained the necessary grades; she paid all required tuition; and she took all required examinations.

71. The only deviation that would have been required was permitting MS. KERRIGAN HAUPT to graduate in the class of 2024/2025 even if the score for her Step 1 Exam was received four (4) days after the commencement ceremony.

*Defendant's Refusal to Accommodate Plaintiff Resulted in Substantial Harm*

72. MS. KERRIGAN HAUPT suffered substantial injury because of Defendant's refusal to accommodate.

73. MS. KERRIGAN HAUPT was supposed to commence residency as a physician in the summer of 2025. Instead, MS. KERRIGAN HAUPT has accepted lesser employment as a "program coordinator," and not a physician, with her residency program.

74. This delay puts MS. KERRIGAN HAUPT off cycle in her training, which delays advancement to fellowship and has introduced an unnecessary gap in essential supervised clinical experience necessary for her ongoing medical training and professional development. Thus, she lost a minimum of one (1) year of attending salary in the future.

75. The delayed graduation has also resulted in reputational harm. MS. KERRIGAN HAUPT will be responsible for explaining on any credentialing paperwork with every medical board for the rest of her career the reason she did not graduate "on time."

76. Due to Defendant's refusal to provide the necessary accommodation, MS. KERRIGAN HAUPT has also suffered embarrassment, distress, anxiety, and invasion of her civil rights.

77. LSU published "Policy Statement 26, Disability Service, Duties, and Compliance" which states "the policy and procedures of Louisiana State University to provide equal-access and opportunity to all persons, without regard to disability, in the recruitment of, admission to, participation in, or employment in, the programs, activities, and services operated and sponsored by the University pursuant to the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 (ADA), as amended, and other related federal and state laws."

78. According to Policy Statement 26, "the university is committed to promoting an atmosphere to prevent discrimination against individuals with disabilities, to bring persons

with disabilities into the social and economic mainstream, to provide enforceable standards to address discrimination against individuals with disabilities, and provide reasonable and appropriate accommodations or auxiliary aids or services."

79. In enrolling at LSUHS, MS. KERRIGAN HAUPT developed an expectation interest that there would be an atmosphere preventing discrimination against individuals with disabilities, enforceable standards to address discrimination against individuals with disabilities, and that LSUHS would provide reasonable and appropriate accommodations or auxiliary aids or services.

80. By and through discrimination outlined in this Complaint, and as will be shown at trial, MS. KERRIGAN HAUPT's expectations have not been satisfied.

81. Upon information and belief, Defendant breached its promise not to discriminate against MS. KERRIGAN HAUPT in exchange for federal funding under the RA.

82. Upon information and belief, Defendant was aware that, for breaching its contract with the Federal Government, it would be subjected to the usual contract remedies in private suits, which include MS. KERRIGAN HAUPT's expectation interest.

83. MS. KERRIGAN HAUPT is entitled to damages that will put her in as good a position as she would have been in had her expectation interests been satisfied by Defendant. Upon information and belief, due to the lack of sufficient accommodations, MS. KERRIGAN HAUPT was not afforded an equal opportunity to engage in the services, programs, and activities offered by Defendant.

84. Defendant was aware of MS. KERRIGAN HAUPT's disability.

85. Defendant intentionally discriminated against MS. KERRIGAN HAUPT in that MS. KERRIGAN HAUPT gave Defendant's employees notice of her disability,

limitations, and needed accommodation, and Defendant nonetheless refused to accommodate; additionally, Defendant intentionally discriminated against MS. KERRIGAN HAUPT with deliberate indifference to her rights and to MS. KERRIGAN HAUPT's accommodation needs.

### CLAIM FOR RELIEF: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

86. MS. KERRIGAN HAUPT repeats and realleges all preceding paragraphs in support of this claim.

87. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

88. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendant's conduct.

89. At all times relevant to this action, MS. KERRIGAN HAUPT has had substantial limitations to her major life activities of digestive function, eating, absorbing nutrients, attending school or work regularly, concentration or stamina due to chronic pain, fatigue, or treatment side effects, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

90. LSU published "Policy Statement 26, Disability Service, Duties, and Compliance" which states "the policy and procedures of Louisiana State University to provide equal-access and opportunity to all persons, without regard to disability, in the recruitment of, admission to, participation in, or employment in, the programs, activities, and services operated and sponsored by the University pursuant to the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 (ADA), as amended, and other related federal and state laws."

91. According to Policy Statement 26, "the university is committed to promoting an atmosphere to prevent discrimination against individuals with disabilities, to bring persons with disabilities into the social and economic mainstream, to provide enforceable standards to address discrimination against individuals with disabilities, and provide reasonable and appropriate accommodations or auxiliary aids or services."

92. Thus, in enrolling at LSUHS, MS. KERRIGAN HAUPT developed an expectation interest that there would be an atmosphere preventing discrimination against individuals with disabilities, enforceable standards to address discrimination against individuals with disabilities, and that LSUHS would provide reasonable and appropriate accommodations or auxiliary aids or services.

93. By and through discrimination outlined in this Complaint, and as will be shown at trial, MS. KERRIGAN HAUPT's expectations have not been satisfied.

94. The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
> 29 U.S.C. § 794(a).

95. Upon information and belief, as set forth herein, Defendant discriminated against MS. KERRIGAN HAUPT on the basis of disability, in violation of 29 U.S.C. § 794.

96. Upon information and belief, a non-exclusive list of Defendant's violations of the Rehabilitation Act and discriminatory conduct against MS. KERRIGAN HAUPT are evidenced by:

    A.    Failing to provide reasonable accommodation to

    MS. KERRIGAN HAUPT; and

  B. Excluding MS. KERRIGAN HAUPT from participation in, and the benefits of, DEFENDANT's services, programs, and activities as a result of DEFENDANT's failing to provide MS. KERRIGAN HAUPT with reasonable accommodation.

97. Defendant had an opportunity to accommodate MS. KERRIGAN HAUPT. Despite numerous emails from MS. KERRIGAN HAUPT on her needed accommodation, and a formal request for accommodation, Defendant refused to provide MS. KERRIGAN HAUPT with her needed accommodation.

98. Defendant had knowledge of MS. KERRIGAN HAUPT's disabilities, limitations, and requested accommodation.

99. Despite knowledge of MS. KERRIGAN HAUPT's disabilities, limitations, and requested accommodation, Defendant failed to accommodate MS. KERRIGAN HAUPT. Defendant's failure to accommodate MS. KERRIGAN HAUPT, when faced with her stated need, constitutes intentional discrimination.

100. As set forth above, MS. KERRIGAN HAUPT was discriminated against solely by reason of her disability and as a result of Defendant's Rehabilitation Act violations set forth above.

101. Upon information and belief, Defendant, the withholding of the Research Distinction designation from MS. KERRIGAN HAUPT constituted retaliation under the Rehabilitation Act.

102. MS. KERRIGAN HAUPT has retained undersigned counsel for the filing and prosecution of this action. MS. KERRIGAN HAUPT is entitled to recover those attorneys' fees, costs and litigation expenses from Defendant pursuant to 29 U.S.C. §794a(b).

103. Pursuant to 29 U.S.C. §794a this Court is provided authority to award MS. KERRIGAN HAUPT compensatory and nominal damages for Defendant's discriminatory actions.

## PRAYER FOR RELIEF

**WHEREFORE,** MS. KERRIGAN HAUPT respectfully prays that:

A. Award to MS. KERRIGAN HAUPT:

 i. Compensatory, nominal, and actual damages pursuant to the RA;

 ii. Reasonable attorneys' fees, costs (including expert fees), and other expenses of the suit, pursuant to the RA.

 iii. Interest on all amounts, at the highest rates and from the earliest dates allowed by law; and

 iv. Any and all other equitable or legal relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

MS. KERRIGAN HAUPT demands a trial by jury on all issues.

Dated: June 17, 2025

[Signature Block on Following Page]

Respectfully Submitted,

/s/ Garret S. DeReus

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996